Whilst this suit is brought in the name of a wife and husband, mother and father of two minor children, it is in fact being prosecuted by the mother who claims under a contract alleged to have been entered into between herself and the defendant, for wages which the latter agreed to pay for the services of her children at his place of business in Leesville, La., at the rate of twenty cents per hour covering a certain period of time.
It is alleged in the petition that there were two contracts entered into on June 22, 1941, one covering the hiring of the minor, Cloteal Johnson, a girl thirteen years old and the other of Lalee Johnson, also a girl, twelve years old. The petition recites that Cloteal worked under the said agreement at various times and intervals between June 23, 1941, and the week beginning July 7, 1941, a total of 240 hours, thus earning the sum of $48, on which she was paid $5 only, leaving a balance due for her services of $43, and that in the same period of time Lalee worked a total of 360 hours, earning $72 on account of which plaintiff received the sum of $5, leaving a balance due of $67. According to further allegations of the petition, Cloteal was discharged by the defendant on July 22, 1941, and Lalee on August 5, 1941, and he refused to pay any more for the services of either. Plaintiff also avers that she is entitled to recover the penalties provided for in such a case as this, by Act No. 138 of 1936, that being the average rate of pay from date of discharge until paid and a reasonable attorney's fee. The prayer is for judgment against the defendant for the sum of $110, with interest from August 5, 1941, plus the sum of $1.60 per day from July 22, 1941, until paid and $1.60 per day from August 5, 1941, until paid, and the further sum of $50 as attorney's fees.
After denying practically all the allegations of the petition the defendant averred in his answer that he operated a "pin ball game" in the town of Leesville, at which the customers, on paying the amount of ten cents were allowed to throw a number of balls at objects representing milk bottles and that they would win prizes according to the number of bottles that were knocked down. The game was operated from about six o'clock in the afternoon until eleven at night. He further avers that the plaintiff, Mrs. Johnson who worked part time each day in a restaurant was employed by him to operate the game, that he agreed to pay her $1 per night for her services, and that she would come over every night with her two children. That they all ran the game together until they were instructed not to do so any further. He avers that he never paid her $5 at any one time but that she was paid the price agreed upon between them from day to day and that he does not owe her or her children anything whatsoever.
Plaintiff's demands were rejected in the court below and she has taken this appeal.
We are presented here with a question of fact, exclusively. The only witnesses were Mrs. Johnson and her two young daughters on one side and the defendant and a man named Franklin, on the other. The conflict which was to be expected is found in their testimony and it cannot be reconciled. To reverse the findings of the trial judge we would have to hold that he manifestly erred and this we cannot say that he has done. As stated by him in his written reasons for judgment, the evidence is so at variance "that it is purely a question of who should be believed and who should not." He expresses his sympathy for the plaintiff and her children *Page 311 
but adds that he finds "it hard to believe that in her unfortunate circumstances she would have consented for her girls to have worked over the number of weeks that they worked unless some payments were made more than the $5.00 she admitted receiving, at the same time denying that she received the amounts which the defendant and Mr. Franklin (his corroborating witness) who seem to have no interest in the case, testified she did receive." She and her husband were not living together and he did not contribute anything to her support and that of her children. In view of her apparent extreme poverty it is highly improbable that she would have let her girls continue working as she claims they did and as long as they did, for a man who refused to pay the wages agreed upon for their services.
Another circumstance which, in our opinion, tends to weaken the plaintiff's side of the case arises out of the time sheets which the two girls said they kept of their hours of work and which were introduced in evidence by plaintiff's counsel. Cloteal's time sheet shows that she worked exactly eight hours each day beginning June 22, 1941, up to and including July 22, 1941. Lalee's shows that she worked exactly eight hours every day, except four, from June 22, 1941, up to and including August 5, 1941. On July 12, 1941, her sheet indicates that she worked nine hours and on July 18, 1941, ten hours. On these same days Cloteal's sheet shows that she worked eight hours. They seem to have been working together all the time until July 22, 1941, and why there is this difference in their working time on those days is not shown. But the important point in connection with these sheets is that whilst neither ever is shown to have worked less than eight hours a day, it appears from their own testimony that often they worked only from five or six o'clock until ten-thirty or eleven at night, or not more than six hours. The defendant's testimony is that on week days they worked only from six o'clock and that it was only on Saturdays and Sundays and on pay-days when the soldiers came to Leesville in larger numbers that the place opened up earlier.
As already pointed out in that part of the written opinion of the district judge from which we have quoted, he rested his decision on the credibility of the witnesses. Naturally, in deciding the case as he did, he accepted the testimony of the defendant and his witness over that offered by the plaintiffs. No good reason has been advanced why we should do otherwise and giving the usual weight which we should to his judgment in matters of this kind we find ourselves constrained to uphold his findings.
Judgment affirmed.